UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA FILM FUND FOUR, LLC

       Plaintiff,

v.

DOES 1 – 47,

       Defendants.

Civil Action No. 1:13-cv-01101-RWS

**MOTION TO QUASH OF "DOE NO. 1" REGARDING PLAINTIFF'S SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSEPCTION OF PREMISES TO COMCAST CABLE AND MOTION TO SEVER DEFENDANTS WITH BRIEF IN SUPPORT**

COMES NOW the Defendant ("Doe No. 1") alleged to be associated with the IP Address 76.97.218.228, as identified in Exhibit 1 to Plaintiff's Complaint, (the "Doe 1 IP Address") in the above-styled matter, and without waiving service of process or any defenses at law which may be available to Doe No. 1 procedurally or with respect to the claims brought by Plaintiff, files this Motion to Quash the subpoena served upon Comcast Cable by Plaintiff pursuant to Federal Rules of Civil Procedure 26 and 45 and to Sever the joined Doe Defendants in the

present case, along with Defendant Do No. 1's supporting brief of law incorporated herein, and respectfully shows the Court as follows:

## STATEMENT OF FACTS

On or about April 4, 2013, Plaintiff Georgia Film Fund Four, LLC filed its Complaint in the above-styled matter, alleging that Defendants Doe 1 through 47, "conspired to and did commit acts of copyright infringement and contributory copyright infringement" of Plaintiff's copyrights with respect to the motion picture, "Fire with Fire" (the "Motion Picture"). See Plaintiff's Complaint (the "Complaint"). In its Complaint, Plaintiff admits that it does not know the identities of Does 1 through 47; however, Plaintiff alleges that its "investigator has downloaded the Motion Picture from each Defendant[.]" Id. at ¶¶ 4, 7.

Plaintiff alleges that each Defendant was a "willing and knowing participant" in the alleged infringement and/or contributory infringement by participating in a "BitTorrent swarm" (the "Plaintiff's Swarm") and that "upon information and belief many members of the swarm at issue downloaded and uploaded portions of Plaintiff's Motion Picture to each other." Id. at ¶¶ 6, 11, and 14. Plaintiff further alleges that "[u]pon information and belief, many John Doe Defendants also acted in concert with other John Doe swarm members and

Defendants by participating in a 'Peer Exchange'…" and "…by linking together globally through use of a 'Distributed Hash Table.'" Id. at ¶¶ 16 and 17.

On or about April 15, 2013, Plaintiff, through its counsel of record, issued a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (the "Comcast Subpoena") to "The Custodian of Records for Comcast Cable" and delivered the same via facsimile number 866-947-5587. A true and accurate copy of the Comcast Subpoena is attached hereto as **Exhibit 1**. In the Comcast Subpoena, Plaintiff directed Comcast Cable to "Provide *all records and other information* relating to each of the following IP addresses attached hereto including the following:… the name, current (and permanent) addresses, telephone numbers, e-mail address and Media Access Control addresses of all individuals whose IP address are listed in the attached spreadsheet[.]" (Emphasis provided.) On or about May 31, 2013, Comcast sent notice to Doe No. 1 that it was in receipt of the Comcast Subpoena and that the Comcast Subpoena identified the Doe 1 IP Address, which Comcast's records reflected as having been assigned to Doe No. 1.

In its Complaint, Plaintiff alleges that the Doe 1 IP Address was connected to the Plaintiff's Swarm at 10:55:15 a.m. on March 23, 2013. Despite the sweeping allegations of coordinated activities and actions done in "in concert," Plaintiff's

Complaint instead demonstrates that, of the forty seven Doe defendants, none of the Doe defendants' IP addresses were identified as having been associated with the swarm identified by Plaintiff at the same time as the Doe 1 IP Address <u>See</u> *Complaint*, Exhibit 1, In fact, only one other Doe defendant's IP address has been identified as having been associated with the swarm cited by Plaintiff on the same day as the Doe 1 IP Address. <u>Id.</u>[1]

Plaintiff alleges that, "[d]espite Plaintiff's use of the best available investigative techniques, it is impossible for Plaintiff to identify Defendants by name at this time." *Complaint* at ¶ 24. Plaintiff, however, alleges that it is able to identify each Defendant "by the Internet Protocol ("IP") address assigned to that Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of each Defendant was observed." <u>Id.</u> at ¶ 25.

---

[1] In fact, the only other IP address identified by Plaintiff as having been connected to the Plaintiff's Swarm on the same day as the Doe 1 IP Address was connected just shy of six and a half (6.5) hours before the BitTorrent client which is purported to have utilized  the Doe 1 IP Address.

## ARGUMENT AND AUTHORITY

**I.  The Court Should Quash the Comcast Subpoena.**

a. <u>The Comcast Subpoena Fails to Meet the Relevancy Test Set Forth in the Federal Rules of Civil Procedure.</u>

Plaintiff's Complaint and *ex parte* request for expedited discovery form yet another in a wave of suits in which copyright infringement plaintiffs seek to "tag" a defendant based solely on an IP address. However, as has been recognized by numerous courts, an IP address is not equivalent to a person or entity. It is neither equivalent to a fingerprint nor to DNA evidence. Indeed, an IP address is far from a reliable identifier for any individual, let alone a basis by which one may pinpoint an alleged perpetrator of an unlawful act.

In a remarkably similar case in which an adult entertainment content producer also sought expedited discovery to learn the identity of persons associated with certain IP addresses, United States District Judge Harold Baker of the Central District of Illinois denied a motion for expedited discovery and reconsideration, holding that, "IP subscribers are not necessarily copyright infringers…The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment."

Order of Apr. 29, 2011, *VPR Internationale v. Does 1-1017*, 2011 WL 8178128 (Central District of Illinois) (the "VPR Internationale Order").

The point so aptly made by Judge Baker is that there may or may not be a correlation between the individual subscriber, the IP address, and the infringing activity. Id. The risk of false identification by ISPs and/or plaintiffs in copyright infringement suits based on internet protocol addresses is vividly illustrated by Judge Baker when he describes a raid by federal agents on a home allegedly linked to downloaded child pornography. Id. The identity and location of the subscriber were provided by the ISP (in the same fashion as Comcast is requested to do by Plaintiff). Id. After the raid revealed no pornography on the family computers, federal agents eventually learned they raided the wrong home. Id. The downloads of pornographic material were traced to a neighbor who had used multiple IP subscribers' Wi-Fi connections. Id.

The risk of false identification and false accusations through discovery and disclosure of identities of internet service subscribers recognized by Judge Baker is also presented here. If the mere act of having an internet address can link a subscriber to alleged acts of copyright infringement, internet subscribers such as Doe No. 1 will face reputational injury, harassment, embarrassment, and unnecessary legal expense arising from broad-brushstroke allegations of

wrongdoing which cannot be meaningfully linked to the Doe defendants by Plaintiff. The reputational risk that Judge Baker found to be an undue burden is equally presented here: "[W]hether you're guilty or not, you look like a suspect." Id. at 3. Moreover, this case presents the same extortion risk that so concerned Judge Baker: "Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong? The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case." Id.

Discovery is not a game. Yet, plaintiffs in these types of cases use discovery to extort settlements from anonymous defendants who wish to avoid the embarrassment of being publicly associated with alleged wrongdoings and/or the legal expenses of fighting off such accusations. Id. Such abuse of the discovery process subverts the purpose of our legal system. The United States Supreme Court has clearly recognized that it is clear from experience that pretrial discovery has a significant potential for abuse. See Seattle Times Co. v. Rinehart, 104 S. Ct. 2199, 2208 (1984).

This type of abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. Id. The Federal Rules of Civil Procedure do not distinguish between public and private

information, nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. Id. As recognized by the Supreme Court, an opportunity therefore exists for litigants to obtain, incidentally or purposefully, information that not only is irrelevant but, if publicly released, could be damaging to reputation and privacy. Id. There thus exists a substantial interest in preventing this sort of abuse of its processes. Id. See also: *Herbert v. Lando*, 441 U.S. 153, 176–177, 99 S.Ct. 1635, 1648–1649, 60 L.Ed.2d 115 (1979); *Gumbel v. Pitkin*, 124 U.S. 131, 145–146, 8 S.Ct. 379, 384–385, 31 L.Ed. 374 (1888).

Given the clear inability of Plaintiff, or even Comcast, to identify the individual who may have engaged in the activities alleged by Plaintiff from IP address issued to a particular Comcast subscriber (in this case Doe No. 1), it is axiomatic that such subpoenas in general and the Comcast Subpoena in particular are invalid. It is widely recognized by the federal courts that implicit in the rule granting subpoena power is a requirement that any subpoena seek *relevant* information. See *Syposs v. United States*, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) ("the reach of a subpoena issued pursuant to [FED. R. CIV. P. 45] is subject to the general relevancy standard applicable to discovery under [FED. R. CIV. P. 26(b)(1)].") (emphasis supplied).

It is well recognized that the information linked to an IP address cannot identify the actual (or alleged) infringer. See *VPR Internationale Order*, at 2.[2] Because the infringer could have been anybody with a laptop passing within range of the router, the information sought by Plaintiff is not relevant to the allegations in Plaintiff's Complaint in any way. Id. Moreover, even if the information has some small amount of relevance to the claim—which it does not—discovery requests cannot be granted if the quantum of relevance is outweighed by the quantum of burden to the defendant. FED. R. CIV. P. 26(b)(2)(C)(iii).

In the present case, the Comcast Subpoena should not have been issued in the first place because the information sought is not relevant to Plaintiff's allegations, nor is it reasonably calculated to lead to the discovery of admissible evidence. Plaintiff's request fails the balancing test called for under Rule 26. Id. Given that Doe No. 1 was only one of a potentially infinite number of persons who *could* have used the IP address in question, the "quantum of relevance" is miniscule at best in the present case. However, the burden to Doe No. 1 is significant. Upon production of the information regarding Doe No. 1 that has been subpoenaed from Comcast, not only will Doe No. 1 be subject to the reputational

---

[2] It is further worth noting that the reliability and accuracy of monitoring programs, such as that relied upon by Plaintiff's investigator in the present case are, in many cases, suspect. See "Challenges and directions for monitoring P2P File Sharing Networks", University of Washington Technical Report, UW-CSE-08-06-01.

damage attendant upon Plaintiff's accusations of wrongdoing, but Doe No. 1 will face significant legal expenses in defending itself from Plaintiff's allegations.

A further burden will fall upon Doe No. 1 (and the other Defendants) should the Comcast Subpoena be upheld. Specifically, Plaintiff seeks far more information from Comcast than the mere identity of certain subscribers. Plaintiff instead seeks "*all records and other information*" regarding Doe No. 1 and its dealings with Comcast (as well as those of the other Defendants), all without any showing of relevance as to this personal information exchanges between two parties to a contractual business relationship. The publication of such private information further increases the burden on not only Defendants but also on Comcast as well.

It has been argued in a number of suits throughout the country that "account information" between a subscriber of a service and a service provider is not private or privileged in any way. Defendant Doe No.1 respectfully argues that such findings are not only fundamentally flawed but also represent bad public policy.

To argue that there is no expectation of privacy whatsoever with respect to contractual dealings between parties doing business with one another is not only contrary to ordinary and traditional business custom, but also lays open the possibility of a stranger intruding into such business dealings without any

substantial justification. Such a precedent can only serve to up-end the very fabric of business conduct between parties contracting with one another as, in many circumstances, the non-public knowledge that the contracting parties have regarding one another and the course of their dealings together represents a significant portion of the value of the business relationship. To destroy this quantum of value in the business relationship will fundamentally change how many companies and individuals do business and how they derive value from their business relationships. Defendant Doe No. 1 respectfully submits that such a fundamental change in economic expectations of business by fiat of the courts serves neither the interests of justice nor those of or national and international economies.

The lack of relevance on the one hand, measured against the severe burden of risking a significant reputational injury and other damages on the other, demonstrate that the Comcast Subpoena fails the Rule 26 balancing test. Id. In light of the Rule 26 balancing test, it is clear that Plaintiff's request for information represents nothing more than an unjustified fishing expedition that will cause significant reputational injury, prejudice, and undue burden to Doe No. 1, if allowed to proceed. For the foregoing reasons, good cause exists to quash the subpoena served on Comcast to compel the disclosure of the information sought by

Plaintiff, including but not limited to the name, address, telephone number, e-mail address, and all records held by Comcast which relate to or reference Doe No. 1.

    b. <u>Plaintiff's Request for Expedited Discovery Was Improperly Granted and Should be Revoked by the Court.</u>

Fed.R.Civ.P. 26(d)(1) provides that "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." The court, however, may grant leave to conduct discovery prior to a conference. <u>Id.</u> In ruling on a motion for expedited discovery, the Court should consider "the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances...". *Better Packages, Inc. v. Zheng,* No. 05–4477, 2006 WL 1373055, at *2 (D.N.J. 2006) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor,* 194 F.R.D. 618, 624 (N.D.Ill. 2000)).

Courts faced with motions for leave to serve expedited discovery requests to ascertain the identity of John Doe defendants in internet copyright infringement cases often apply the "good cause" test. <u>See</u> *In re Bittorrent Adult Film Copyright Infringement Cases,* 2012 WL 1570765 (E.D.N.Y. 2012) (granting limited early discovery only as to John Doe 1); *Pacific Century Int'l. Ltd. v. Does 1–101,* No. 11–2533, 2011 WL 5117424, *2 (N.D.Cal. 2011) (finding plaintiff had not shown good cause to obtain expedited discovery). Good cause exists where "the need for

expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Am. Legalnet, Inc. v. Davis,* 673 F.Supp.2d 1063, 1066 (C.D.Cal. 2009); <u>accord</u> *Semitool, Inc. v. Tokyo Electron Am., Inc.,* 208 F.R.D. 273, 275 (N.D.Cal. 2002).

Courts have recognized that significant procedural questions are faced in analyzing whether a plaintiff should be permitted to serve expedited discovery in the form of Rule 45 subpoenas on various ISPs in order to obtain information that will allegedly reveal the true identity of John Doe defendants by connecting the IP address the plaintiff possesses to the account holder information of that IP address, which is in the possession of the ISP. For example, in an almost identical case in which a plaintiff sought precisely this type of expedited discovery when it was only able to identify the John Doe defendants by IP address, the Honorable Mark Falk, U.S.M.J. denied the request for expedited discovery, without prejudice, on the basis that: "[g]ranting Plaintiff's motion has the potential to permit Plaintiff to obtain detailed personal information of innocent individuals. This could subject an innocent individual to an unjustified burden." *Third Degree Films, Inc. v. John Does 1–110,* Civ. A. No. 2:12–cv–5817 (D.N.J. 2013).

Specifically, Judge Falk explained the concern as follows: In some instances, the IP subscriber and the John Doe defendant may not be the same

individual. Indeed, the infringer might be someone other than the subscriber; for instance, someone in the subscriber's household, a visitor to the subscriber's home, or even someone in the vicinity that gains access to the network. See Id. and *VPR Internationale v. Does 1–1017,* No. 11–2068, 2011 WL 8179128 (C.D.Ill. 2011). As a result, Plaintiff's requested expedited discovery has the potential to ensnare numerous innocent internet users into the litigation placing a burden on them that outweighs Plaintiff's need for discovery as framed. Id.

As in the *VPR Internationale* case, Plaintiff here seeks all information in the possession of the ISP regarding the account holder of a certain IP address, including the account holders' name, address, e-mail address, and other personal identifiable information. See Id. and the Comcast Subpoena. The release of this information would impose an undue burden on individuals who may have provided their information to an ISP, but who did not engage in the alleged illegal distribution of Plaintiff's work. This distinction, namely the difference in identity between the holder of an IP account and the individual who allegedly actually distributed the copyrighted work, as discussed above, is critical and not likely addressed by the expedited discovery sought by Plaintiff.

Even permitting Plaintiff to obtain the expedited discovery that it seeks would not necessarily reveal the proper defendant's identity. It will only provide

the account holder. The second step would be for Plaintiff to determine whether that particular IP account holder accessed the Swarm and illegally distributed the copyrighted work. See *Pac. Century Int'l Ltd. v. Does,* C–11–02533 DMR, 2011 WL 5117424 (N.D.Cal. 2011). In other words, Plaintiff must go beyond the "limited discovery" that it asserted would lead to the John Doe defendants' identities. Id. The burdens associated with the potentially expansive and intrusive discovery that Plaintiff may need to propound in order to obtain the John Doe defendants' identities likely would outweigh Plaintiff's need for expedited discovery. Id.

Based on the foregoing, the Court should quash the Comcast Subpoena as unduly burdensome and prejudicial to Defendant Doe No. 1.

## II.   The Doe Defendants Have Been Improperly Joined by Plaintiff and the Court Should Sever the Defendants and Require Plaintiff to Pursue Each Defendant Individually.

Rule 20 of the Federal Rules of Civil Procedure provides that "[persons] ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed.R.Civ.P. 20(a). This Rule further provides that "[t]he Court may issue orders—including an order for separate trials—to protect a party against embarrassment, delay, expense, or other prejudice...." Fed.R.Civ.P. 20(b). In accordance with Rule 20, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed.R.Civ.P. 21.

As was the case in *Raw Films, Inc. v. Does 1-32*, 1:11-CV-2939-TWT, 2011 WL 6840590 (N.D. Ga.  2011), the current case, too, is part of an "outbreak of similar litigation ... around the country," in which copyright holders have attempted to assert claims against multiple unknown defendants by joining them, often in large numbers, into a single action. <u>See</u> <u>Id.</u> and *On The Cheap, LLC v. Does 1–5011,* No. C10–4472 BZ, 2011 WL 4018258, at * 1 (N.D.Cal. 2011) (published order). The plaintiffs in these cases argue that when each defendant is one of many users simultaneously uploading and downloading a protected work, the defendant acts as part of a "swarm" in a "series of transactions" involving "common questions of law and fact." This practice is known as "swarm joinder," and is the joinder theory relied upon by the Plaintiff in this action.

The swarm joinder theory has been considered by various district courts, the majority of which have rejected it. <u>See</u> *Raw Films, Inc.*, 2011 WL 6840590 at *1

and *On The Cheap,* 2011 WL 4018258, at *1 (gathering cases) (published order). Downloading a work as part of a swarm does not constitute "acting in concert" with one another, particularly when the transactions happen over a long period. See*, e.g., Hard Drive Productions, Inc. v. Does 1–188,* No. C–11–01566 JCS, 2011 WL 3740473, at *13 (N.D.Cal. 2011) ("In fact, the nearly six-week span covering the activity associated with each of the addresses calls into question whether there was ever common activity linking the 51 addresses in this case.").

The defendants alleged to have participated in "swarm" infringing often have different and divergent defenses to the copyright violation claims and to allow them to be asserted in a single case would defeat, not enhance, judicial economy. See *CP Productions, Inc. v. Does 1–300,* 2011 WL 737761 (N.D.Ill. 2011) ("No predicate has been shown for thus combining 300 separate actions on the cheap, if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.").

As in *Raw Films, Inc.,* the facts here demonstrate why the swarm joinder pleading tactic is not appropriate in the present action. The differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert. While the Defendants may have used the same or similar peer-to-peer system, the Complaint does not demonstrate that they were

acting in concert to share infringing materials with each other. For example, Doe 8, who is alleged to have been in the swarm on February 5, 2013, is unlikely to have been in the swarm at the same time as Doe 7, who is alleged to have been in the swarm on February 9, 2013. <u>See</u> Complaint, Exhibit 1.

In the *Raw Films, Inc.* case, the court found that the plaintiff had not adequately alleged that the defendants were engaged in a common series of transactions as required by Rule 20, and thus joinder was not proper. <u>See</u> *Raw Films, Inc.*, 2011 WL 6840590 at *2. In accordance with *Raw Films, Inc.* and in light of the variety of defenses likely to be raised in the present case, this Court should find that Defendants were not engaged in a common series of transactions and, as such, the Court should determine that joinder would not result in judicial economy and, in doing so, exercise its discretion to sever the claims against each Defendant individually.

## CONCLUSION

Based upon the foregoing arguments, the Comcast Subpoena fails to meet the relevancy test set forth in the Federal Rules of Civil Procedure and should be quashed. Further, Plaintiff's request for expedited discovery was improperly granted and should be revoked. Finally, pursuant to Rule 20 the Court should sever

John Doe 1 from the pending action, and require to Plaintiff to pursue its action separately.

This thirty-first (31st) day of July, 2013.

Respectfully submitted:

BRISKIN, CROSS & SANFORD, LLC

s/ Byron M. G. Sanford, Esq.
Georgia Bar No. 005055

s/ Michael A. Penn, Esq.
Georgia Bar No. 571325

1001 Cambridge Square, Suite D
Alpharetta, Georgia  30009
Tel.:  (770) 410-1555
Fax:  (770) 410-3281
bsanford@briskinlaw.com
mpenn@briskinlaw.com

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to LR 26.1, I hereby certify that I have this day caused to be served on Plaintiff, this Certificate along with *Defendant Doe No. 1's Motion to Quash Subpoena to Comcast Cable, Motion to Sever Defendants, and Brief In Support* by filing a copy of said pleading via the CM/ECF system which will automatically send e-mail notification of such filing to its attorney of record:

Alan Kan
**Kan & Clark, LLP**
Overlook 1
2849 Paces Ferry Road, Suite 640
Atlanta, GA 30339

I hereby further certify that I electronically filed the *Defendant Doe No. 1's Motion to Quash Subpoena to Comcast Cable, Motion to Sever Defendants, and Brief In Support* with the Clerk of Court using the CM/ECF system.

This thirty-first (31st) day of July, 2013.

Respectfully submitted:

BRISKIN, CROSS & SANFORD, LLC

s/ Byron M. G. Sanford, Esq.
Georgia Bar No. 005055

s/ Michael A. Penn, Esq.
Georgia Bar No. 571325

Attorneys for Defendant John Doe No. 1

1001 Cambridge Square, Suite D
Alpharetta, Georgia  30009
Tel.:  (770) 410-1555
Fax:  (770) 410-3281
bsanford@briskinlaw.com
mpenn@briskinlaw.com

## <u>CERTIFICATE PURSUANT TO LR 7.1D, NDGa</u>

I hereby certify that this document has been prepared with Times New Roman font in 14 point, as approved by the court pursuant to LR 5.1C, NDGa.

This thirty-first (31st) day of July, 2013.

Respectfully submitted:

BRISKIN, CROSS & SANFORD, LLC

s/ Byron M. G. Sanford, Esq.
Georgia Bar No. 005055

Attorneys for Defendant Doe No. 1

1001 Cambridge Square
Suite D
Alpharetta, Georgia  30009
Tel.:  (770) 410-1555
Fax:  (770) 410-3281
bsanford@briskinlaw.com